**388 A.2d 1.**

LUCY VITAL DIGBY *v.* CHARLES DIGBY.

JUNE 19, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.  This civil action for negligence was brought in the Superior Court by the plaintiff, Lucy Vital Digby, to recover for injuries allegedly sustained when an automobile, which was owned and operated by the defendant Charles Digby and in which she was a passenger, collided with another motor vehicle. Subsequent to that collision, the parties were married, and at the time this action was instituted they were living together as husband and wife. Summary judgment was entered against the plaintiff because of the doctrine of interspousal immunity and the plaintiff appealed.

The only question is whether we should abrogate the common law doctrine of interspousal immunity. That doctrine prohibits suits between husband and wife for tortious injuries, *Oken* v. *Oken*, 44 R.I. 291, 117 A. 357 (1922), even when the wrong causing the injuries occurs prior to marriage. *Benevides* v. *Kelly*, 90 R.I. 310, 157 A.2d 821 (1960).

The rule has persisted in this state notwithstanding the adoption in the 19th century of statute law conferring property rights upon married women and authorizing them to sue and be sued [now G.L. 1956 (1969 Reenactment) ch. 4 of title 15]. This court has refused to construe that legislation as abolishing the doctrine, and its consistent response to arguments urging abrogation has been that "[i]f such a radical change is to be made in the common law rights and liabilities of married persons * * * it must be made by clear enactment of the General Assembly * * *." *Oken* v. *Oken*, 44 R.I. at 293, 117 A. at 358; *accord, Castellucci* v. *Castellucci*, 96 R.I. 34, 36, 188 A.2d 467, 468 (1963); *Benevides* v. *Kelly*, 90 R.I. at 316, 157 A.2d at 824.

Notwithstanding our seeming insistence that repeal or modification of the immunity doctrine should originate with the Legislature, recent years have seen us drive an opening wedge in the doctrine. In *Trotti* v. *Piacente*, 99 R.I. 167, 168-69, 206 A.2d 462, 463 (1965), we reasoned "that the husband's immunity from suit should not be confused with his culpability for the wrong," and that consequently marriage, although not destructive of a wife's tort action against her husband, denies her the right to recover damages therefor. Relying on that reasoning, we held in *Trotti* that a husband's immunity in a negligence action brought by his wife does not extend to his employer and, in *Zarrella* v. *Miller*, 100 R.I. 545, 217 A.2d 673 (1966), that immunity does not bar an action against the spouse of an injured party for contribution under the Uniform Contribution Among Tortfeasors Act, now G.L. 1956 (1969 Reenactment) ch. 6 of title 10.

Furthermore, we contemporaneously, albeit in related areas, endorsed the principle that "[w]hile a deferral to the legislature in the initiation of changes in matters affecting public policy may often be appropriate, it is not required where the concept demanding change is judicial in its origins." *Henry* v. *John W. Eshelman & Sons*, 99 R.I. 518, 527, 209 A.2d 46, 51 (1965) (Joslin, J., concurring); *accord, Ritter* v. *Narragansett Electric Co.*, 109 R.I. 176, 187, 283

A.2d 255, 261 (1971) (abandonment of privity requirement in products liability cases), *Becker* v. *Beaudoin,* 106 R.I. 562, 569-70, 261 A.2d 896, 900-01 (1970) (abrogation of the doctrine of municipal immunity); *Rampone* v. *Wanskuck Buildings, Inc.,* 102 R.I. 30, 34-35, 227 A.2d 586, 588 (1967) (abrogating the rule that persons properly on leased premises may not sue for injuries resulting from breach of a landlord's covenant to repair).

We further note that courts elsewhere have initiated changes in the marital disability rule despite their own prior defenence to the legislature. Those courts, in justifying that departure, have said that "[l]egislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule," *Woods* v. *Lancet,* 303 N.Y. 349, 355, 102 N.E.2d 691, 694 (1951); *accord, e.g., Brooks* v. *Robinson,* 259 Ind. 16, 22-23, 284 N.E.2d 794, 797 (1971); *Lewis* v. *Lewis,* 370 Mass. 619, 628-29, 351 N.E.2d 526, 531-32 (1976); *Beaudette* v. *Frana,* 285 Minn. 366, 370-71 173 N.W.2d 416, 418-19 (1969); *Rupert* v. *Stienne,* 90 Nev. 397, 399-400, 528 P.2d 1013, 1014-15 (1974); *Immer* v. *Risko,* 56 N.J. 482, 487, 267 A.2d 481, 483-84 (1970); *Flores* v. *Flores,* 84 N.M. 601, 603-04, 506 P.2d 345, 347-48 (Ct. App. 1973); *Freehe* v. *Freehe,* 81 Wash. 2d 183, 189, 500 P.2d 771, 775-76 (1972).

In light of these precedents, we are free to abandon our self-imposed stay of judicial action and to examine the rationales that gave meaning and coherence to the judically created rule for the purpose of determining whether those rationales retain their vitality. If that examination disclosed that the rule has become inconsonant with the needs of our contemporary society and that its further application will work injustice, "a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula." *Lewis* v. *Lewis,* 370 Mass. at 628, 351 N.E.2d at 531; *accord, Immer* v. *Risko,* 56 N.J. at 487, 267 A.2d at 483-84; *Maestas* v. *Overton,* 87 N.M. 213, 214, 531

P.2d 947, 948 (1975); *Freehe* v. *Freehe*, 81 Wash. 2d at 189, 500 P.2d at 775-76.

Accordingly, we focus on the public policy arguments that justify a judically created rule immunizing tortfeasors and denying recovery to their victims merely because of their marital relationship. That "rule has its roots in the common law conception of the identity of the husband and wife as one * * * [citations omitted]." *Trotti* v. *Piacente*, 99 R.I. at 168, 206 A.2d at 463; *accord, Self* v. *Self*, 58 Cal. 2d 683, 684, 376 P.2d 65, 66, 26 Cal. Rptr. 97, 98 (1962); *Rupert* v. *Stienne*, 90 Nev. at 401, 528 P.2d at 1015; *Immer* v. *Risko*, 56 N.J. at 484, 267 A.2d at 482. Courts and legislatures, however, have long abandoned the common law unity theory as outmoded and incompatible with current conditions and have acknowledged that the theory can no longer support that rule. *Lewis* v. *Lewis*, 370 Mass. at 622, 351 N.E.2d at 528-29; *Rupert* v. *Stienne*, 90 Nev. at 401, 528 P.2d at 1015; *Immer* v. *Risko*, 56 N.J. at 488, 267 A.2d at 484.

Yet, the proponents of interspousal immunity argue that the rule should be retained because abandonment would disrupt the peace and harmony of the family. *Lewis* v. *Lewis*, 370 Mass. at 623, 351 N.E.2d at 529; *Immer* v. *Risko*, 56 N.J. at 488, 267 A.2d at 484. The potential for marital discord, however, does not bar interspousal actions other than those sounding in tort, though seemingly any other action would be equally likely to engender conjugal discord. *Rupert* v. *Stienne, 90 Nev. at 402, 528 P.2d at 1016; Immer* v. *Risko*, 56 N.J. at 488-89, 267 A.2d at 484. Dean Prosser's response to this contention is that it is based

> "on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy — and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquility if she sues

him for a tort to her property, or brings a criminal prosecution against him." Prosser, *Law of Torts* §122 at 863 (4th ed. 1971).

Relying on a somewhat similar rationale, the Supreme Court of Washington has reasoned that if peace and tranquility prevailed between spouses either no action would be commenced or one that was commenced would continue only so long as that harmonious relationship was not jeopardized. *Freehe* v. *Freehe*, 81 Wash. 2d at 187, 500 P.2d at 774.

The presence of insurance in a majority of interspousal tort actions, particularly those arising from automobile collisions, further minimizes the likelihood that recovery of damages will disrupt the marital relationship. *Immer* v. *Risko*, 56 N.J. at 489, 267 A.2d at 484-85. Nonetheless, the existence of insurance has given rise to the further contention by proponents of the immunity doctrine that its abrogation will result in a resort to fraud and collusion for the purpose of collecting damages from a negligent spouse's insurer. *Immer* v. *Risko*, 56 N.J. at 490, 267 A.2d at 485; *Klein* v. *Klein*, 56 Cal. 2d 692, 694, 376 P.2d 70, 72, 26 Cal. Rptr. 102, 104 (1962). But we should not immunize wrongdoers from liability simply because the existence of liability insurance may increase the temptation to engage in fraud or collusion, *Freehe* v. *Freehe*, 81 Wash. 2d at 188-89, 500 P.2d at 775. That temptation "exists to some degree in all cases," *Klein* v. *Klein*, 58 Cal. 2d at 695, 376 P.2d at 72, 26 Cal. Rptr. at 104, and "the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class." *Freehe* v. *Freehe*, 81 Wash. 2d at 189, 500 P.2d at 775.

Moreover, in opposition to the fraud and collusion rationale for retaining the immunity doctrine is the general principle of tort law that where a wrong has been com-

mitted, there should be recovery, absent strong countervailing public policy reasons. *Lewis* v. *Lewis,* 370 Mass. at 629, 351 N.E.2d at 532; *Rupert* v. *Stienne,* 90 Nev. at 402, 528 P.2d at 1016. Our legal system is not so inadequate that the resourcefulness of the judiciary and of the Legislature will be unable to counteract that potential and to respond as instances of fraud and collusion may occur. *See Klein* v. *Klein,* 58 Cal. 2d at 695-96, 376 P.2d at 72, 26 Cal. Rptr. at 104; *Rupert* v. *Stienne,* 90 Nev. at 401, 528 P.2d at 1015; *Immer* v. *Risko,* 56 N.J. at 493-94, 267 A.2d at 487.

We therefore conclude that, notwithstanding our prior pronouncements to the contrary, it is still open to this court to reconsider whether the common law rule of interspousal immunity should prevail in this state. Having done so, it is our judgment that actions sounding in tort by one spouse against another, at least as to claims arising out of motor vehicle collisions, should no longer be barred. We thus circumscribe our holding because of an awareness that the mutual concessions implicit in the marital relationship may result in conduct which, although tortious when occurring between two strangers, may not be tortious when occurring between spouses. *Lewis* v. *Lewis,* 370 Mass. at 630, 351 N.E.2d at 532; *accord, Beaudette* v. *Frana,* 285 Minn. at 372-73, 173 N.W.2d at 420. Like the Supreme Judicial Court of Massachusetts in the *Lewis* case, we leave to the future any further definition of the scope of interspousal tort liability. *Lewis* v. *Lewis,* 370 Mass. at 630, 351 N.E.2d at 532-33.

We hold that the absolute defense of interspousal immunity in actions for tort is abrogated as to the instant case and prospectively as to all other causes of action arising 60 or more days after the filing of this opinion.

The plaintiff's appeal is sustained, the judgment appealed from is reversed and the case is remanded to the Superior Court for further proceedings.

*Resmini, Fornaro & Colagiovanni, Ronald J. Resmini*, for plaintiff.

*Gunning, LaFazia & Gnys, Inc., Edward P. Sowa, Jr.*, for defendant.