394 A.2d 1353.

ERNEST ASPLIN, *Executor, vs.* AMICA MUTUAL INSURANCE COMPANY.

DECEMBER 5, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.    On March 7, 1976, Clifton McAdams, accompanied by his wife, Alma, was driving along Post Road in the city of Warwick. Both were killed when their automobile left the road and collided with a telephone pole. In July of the same year, the executor under the wife's will instituted this wrongful death action in the Superior Court against the deceased husband's automobile liability insurer.[1] The defendant moved for summary judgment on the ground that the rule precluding tort actions between spouses operated as a bar to the action. The motion was granted and the plaintiff appealed.

Only a few months ago, in *Digby* v. *Digby,* 120 R.I. 299, 388 A.2d 1 (1978), we abrogated the defense of interspousal immunity in the limited context of cases involving automobile collisions, leaving further elaboration of the scope of the surviving doctrine to future cases. Our conclusion, however, applied only to the case there on review and to other causes of action that accrued 60 or more days after the filing of our opinion. The claim at issue accrued prior to the publication of the *Digby* opinion and therefore, for the purposes of this case, it is assumed that the general rule of immunity in tort actions between spouses still prevails.

Thus, if the issue in this case were the same as that in *Digby,* the doctrine of interspousal immunity would bar this

---

[1]General Laws 1956 (1968 Reenactment) §27-7-2, as amended by P.L. 1973, ch. 205, §1, provides that an injured party, or in the event of his death the party entitled to sue therefor, may proceed directly against an insurer if, at the time of the commencement of the action, the insured is dead and the probate proceedings have not been initiated.

action. The issue, however, is not the same. In *Digby*, we were concerned with the survival of a doctrine having its origins and rationale in a social order which had been dead for more than a century. We elected to limit the doctrine's viability because, in our judgment, it had "become inconsonant with the needs of our contemporary society" and because "its further application [would] work injustice." *Id.* at 302, 388 A.2d at 3. Our concern in this case, however, is not whether the immunity rule is consistent with the realities of contemporary life, but whether the policy considerations which lie at its roots continue to have meaning when the marriage has been terminated by the death of one or both spouses.

We referred to those policy considerations in *Benevides* v. *Kelly*, 90 R.I. 310, 157 A.2d 821 (1960), where we explained that "the validity, if any, of the doctrine was based on the concept of the identity of husband and wife in the unity of marriage and on the basis that public policy required that such suits be barred as disruptive of the marital relationship." *Id.* at 312, 157 A.2d at 822. Those considerations, however, whatever their relevance in other contexts, clearly are inapplicable where the death of one or both spouses terminates the marriage. At that point, the marital relationship, having been dissolved by death, can no longer be disrupted and the need for preserving the marital harmony is completely lacking in pertinence. *Welch* v. *Davis*, 410 Ill. 130, 134, 101 N.E.2d 547, 549 (1951); *Shumway* v. *Nelson*, 259 Minn. 319, 323, 107 N.W.2d 531, 533 (1961); *Long* v. *Landy*, 35 N.J. 44, 53, 171 A.2d 1, 6 (1961); *Johnson* v. *Peoples First National Bank & Trust Co.*, 394 Pa. 116, 119-20, 145 A.2d 716, 717-18 (1958).

We have concluded in other contexts that the interspousal immunity doctrine is inapplicable in a suit that, although based on an interspousal tort, does not involve both spouses as parties to the suit. In that kind of case, like in this case, a rule based on the preservation of marital harmony is meaningless. Thus, we concluded in *Trotti* v. *Piacente*, 99 R.I. 167, 206 A.2d 462 (1965) that one spouse's immunity in a

negligence action does not extend to his employer and, in *Zarrella* v. *Miller*, 100 R.I. 545, 217 A.2d 673 (1966), that such immunity is not a bar to an action by a third party against an injured party's spouse for contribution under the Uniform Contribution Among Tortfeasors Act, now G.L. 1956 (1969 Reenactment) §10-6-1 to -11.

In *Castellucci* v. *Castellucci*, 96 R.I. 34, 188 A.2d 467 (1963), however, where the facts were substantially the same as those in this case, we reached a different result. We did not even discuss whether the public policy of protecting the marital relationship applies where the marriage has been terminated by death. Instead, we rested our decision, as we had in the seminal case of *Oken* v. *Oken*, 44 R.I. 291, 117 A. 357 (1922), on the ground that any alteration in the policy underlying the common-law rule of interspousal immunity should be left to legislative action rather than judicial determination.

What we lost sight of in *Castellucci*, however, was that the rationale that a personal tort action between husband and wife will disrupt and destroy the peace and harmony of the home and is therefore against the policy of the law has no place in a case where the death of one or both spouses has intervened between the tortious act and the commencement of the suit. Once the death of a spouse does occur, the marital relationship can no longer be disrupted and the policies underlying immunity cannot be furthered by denying recovery. In these circumstances, we believe that when the reason for a rule no longer exists, the rule itself should not apply.

We conclude, therefore, that the defense of interspousal immunity is no longer available in an action based on an interspousal tort where one or both spouses is dead. The plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for further proceedings.

*Joseph G. Miller,* for plaintiff.

*Hanson, Curran & Parks, A. Lauriston Parks, Dennis J. McCarten,* for defendant.