**Olga PEZZA**

v.

**Michael PEZZA et al.**

**No. 94–244–Appeal.**

Supreme Court of Rhode Island.

Feb. 26, 1997.

Henry M. Swan, Providence, for Plaintiff.

Anthony Mignanelli, Providence, Guy J. Wells, Greenwich, for Defendant.

James P. Marusak, Providence, Amicus Curiae.

## OPINION

BOURCIER, Justice.

This case comes before us on appeal from a final judgment of the Superior Court. The plaintiff below, Olga Pezza (Olga), had filed a petition seeking a declaration of her rights in four parcels of real estate that her deceased husband, Anthony Pezza (Anthony), had transferred prior to his death into an irrevocable trust for the benefit of his children by a former marriage. The trial justice found that the trust created by Anthony was valid, constituted a completed and absolute inter vivos transfer by the time he died, and would not be declared invalid for the purpose of satisfying Olga's statutory survival interest, as codified in G.L.1956 § 33–25–2.[1]

Anthony owned and operated a garage door sales and installation business in Johnston, Rhode Island. His son, Michael Pezza (Michael), and his daughter, Patricia Pezza (Patricia), were both at one time or another employed in that business. Both Michael and Patricia were children of Anthony's first marriage, which ended when his first wife, Flora, died.

On February 21, 1973, Anthony married Olga, whose first marriage had ended in divorce. At some point during their marriage, Olga was listed as the joint owner of a residence in Florida that Anthony had inherited from his mother. Olga and Anthony also shared several joint bank accounts.

On December 29, 1983, Anthony created an inter vivos trust in which he named himself trustee and his son, Michael, successor trustee. Four parcels of real estate, acquired by Anthony prior to his marriage to Olga, were conveyed to that trust. Also conveyed to the trust were the shares of stock owned by Anthony in his garage door business corporation. Anthony's intent when conveying his real and personal property into the trust, as expressed to his attorney who drafted the trust documents, was to have his children own the property after his death, in satisfaction of a deathbed promise he had made to his first wife.[2] However, despite his conveyance of the property to the trust, Anthony continued to occupy one of the parcels as his marital estate. Furthermore, he continued to collect rents from the other three parcels. Additionally, as part of the trust agreement, Anthony retained the power to revoke the trust and the power to demand payment of the principal.

---

1. General Laws 1956 § 33–25–2 reads as follows:
   "Whenever any person shall die leaving a husband or wife surviving, the real estate owned by the decedent in fee simple at his or her death shall descend and pass to the husband or wife for his or her natural life subject, however, to any encumbrances existing at death; provided that the liability, if any, of the decedent to discharge the encumbrance or encumbrances shall not be impaired. The provisions of §§ 33–1–1 and 33–1–2 shall be subject to the provisions of this chapter and of § 33–1–6."

2. Some property was not conveyed to the trust. Anthony explained to his attorney that it was his intention that Olga would retain possession of the house in Florida and would enjoy the benefit of certain monetary assets, including his individual retirement account.

Anthony's will, executed simultaneously with the trust, contained a "pour-over" provision that provided that any of his remaining assets would be placed into and become part of the trust upon his death.

On June 25, 1986, following a disagreement between Anthony and Olga, Anthony resigned as trustee of the trust created on December 29, 1983, and pursuant to the provisions of the trust agreement, appointed his son, Michael, as his successor trustee. Anthony also on that same date waived his right to revoke the trust.

On November 14, 1986, Olga commenced divorce proceedings against Anthony.

On December 5, 1986, less than a month after commencement of the divorce proceedings, Anthony disclaimed his power to demand payment of the trust principal, to be effective as of June 25, 1986, that being the date when Michael was appointed successor trustee and Anthony waived his right to revoke the trust.

Anthony died testate on August 18, 1990.

In her complaint for declaratory relief filed in the Providence County Superior Court on January 17, 1991, Olga contended that Anthony's transfer of his real property into the trust for the benefit of his children from his first marriage was a fraudulent attempt on his part to deny her of her marital rights granted pursuant to § 33–25–2, which provides that a surviving spouse becomes entitled to a life estate in all of his or her deceased spouse's real estate owned in fee simple at the time of his or her death. Olga contended that the trust should be declared invalid and that she should be declared to have a life estate in the real property that Anthony had deeded to the trust.

After trial without a jury on February 14 and 17, 1994, the trial justice, in a written decision entered pursuant to Rule 52(a) of the Superior Court Rules of Civil Procedure, found that Olga had failed to prove a fraudulent transfer on the part of Anthony in creating the trust and that no legal basis had been shown for invalidating the final trust agreement executed by Anthony on December 29, 1983. The trial justice determined initially that the trust became irrevocable and nontestamentary in nature as a result of Anthony's actions taken on June 25 and December 9, 1986. The trial justice in his decision noted further that, in deciding whether to enforce the trust agreement, there existed a conflict between two competing policy concerns, namely, the right of a property owner to freely alienate his or her property interests and the right of a surviving spouse to some continuation of his or her interest in the property owned by his or her deceased spouse in fee simple at the time of his or her death, the latter right being the policy concern that was once protected by dower and curtesy prior to their abolition by § 33–25–1. Section 33–25–2, which grants a life estate to a surviving spouse, replaced dower and curtesy as the means through which a surviving spouse's rights are protected.

The trial justice, after reviewing various court holdings from other jurisdictions, concluded that there were basically two tests utilized by the courts in situations such as were present before him, one being the intent to defraud or fraudulent transfer test and the other being the illusory transfer test. After consideration of the relevant policy concerns inherent in each and after thoroughly reviewing both the relevant case law and the relevant facts in the trial record, he concluded that the illusory transfer test, as espoused in *Newman v. Dore*, 275 N.Y. 371, 9 N.E.2d 966 (1937), provided the best and fairest means of analysis. The trial justice consequently held that transfers of property that serve to defeat a surviving spouse's statutory share are invalid only if *illusory* and that an intent to defraud is, standing alone, insufficient to invalidate an irrevocable trust agreement. The trial justice found additionally that on the basis of the facts in the trial record, Anthony's transfer of his real estate to the trust, although arguably testamentary in nature when first made in 1983, was later transformed into a real and nonillusory inter vivos trust by 1986 when he appointed his son, Michael, as trustee and made the trust irrevocable. Accordingly, the trial justice found that at the time of Anthony's death the trust was real, valid, and not illusory, and the property that had been transferred into the

trust was not therefore subject to the life estate provided by § 33–25–2.

This Court has not yet considered the question of whether an inter vivos trust can be used to defeat a surviving spouse's statutory right to a life estate in his or her deceased spouse's real estate. Therefore, when an issue of first impression is presented to us, we generally look to other jurisdictions for guidance.

Those other jurisdictions that have previously considered the question of whether an inter vivos trust can be used to defeat a surviving spouse's statutory survival interest in real estate have used various approaches in their analyses. The two primary tests employed by the various courts examining this issue are known as the fraudulent intent test, otherwise known as the intent to defraud test, and the illusory transfer test. In the fraudulent transfer test, the court examines several case-specific factors in order to determine whether in the particular case before it the deceased spouse had at the time of the transfer of property into the trust an intent to defraud his or her spouse of his or her statutory survival interest. Those factors are "if the transfer was made without consideration; the size of the transfer in relation to the [spouse's] total assets; the time between the transfer and the [spouse's] death; relations which existed between the husband and wife at the time of the transfer; and the source from which the property came." *Sherrill v. Mallicote,* 57 Tenn.App. 241, 417 S.W.2d 798, 802 (1967). Once those factors have been considered, the court must then decide whether the transfer was made with an intent to deprive the surviving spouse of his or her statutory share, and if the court determines that such an intent to deprive was present, the court will invalidate the transfer and make the trust property available for distribution to the surviving spouse pursuant to the jurisdiction's statutory survival share statute. *See also Hanke v. Hanke,* 123 N.H. 175, 459 A.2d 246 (1983).

The illusory transfer test involves an approach different from that of the fraudulent intent test. It focuses not on the intent of the transferor-spouse but, instead, on the substance of the transfer itself, that is, whether the transfer was "real" or "illusory." In *Newman, supra.,* the most often cited case involving the illusory transfer test, the New York court noted that most jurisdictions have declined to adopt the fraudulent intent test either because to do so would "cast doubt upon the validity of all transfers made by a married man [or woman], outside of the regular course of business" or because it was "difficult to find a satisfactory logical foundation for it." 9 N.E.2d at 968. The court opined that the fraudulent intent of the spouse making the inter vivos transfer to a trust was not relevant to the court's inquiry because the law in New York at the time *Newman* was decided gave a surviving spouse only an expectancy interest in the real property of the other spouse,[3] an interest conditioned on the fact that the spouse would own some real property at the time of his or her death. Furthermore, the court noted that the law in New York at that time did not restrict transfers of property during the life of a spouse. Therefore, the court in *Newman,* concluded that no right of the wife had been invaded by the husband's inter vivos transfer of his property, which incidentally acted to defeat the wife's mere expectancy interest in her statutory survival share. As a result, the *Newman* court held that the only relevant inquiry in the factual situation before it wherein the surviving spouse had only an expectancy interest prior to the death of the other spouse was whether the spouse who had transferred the property had "in good faith divested himself [or herself] of ownership of his [or her] property or ha[d]

---

3. The relevant law in *Newman v. Dore,* 275 N.Y. 371, 9 N.E.2d 966 (1937) provided that a surviving spouse could elect to take his or her share of the deceased spouse's estate according to the laws of intestacy instead of taking under the spouse's will. However, a surviving spouse could not make that election when the deceased spouse " 'devised or bequeathed in trust an amount equal to or greater than the intestate share, with income thereof payable to the surviving spouse for life.' " *Id.* at 966. The deceased husband in *Newman* did have such a provision in his will whereby his wife would get a life estate in one third of his estate at death. However, three days prior to the husband's death, he transferred all of his property into a trust. It is the validity of that later trust that the wife challenged in *Newman.*

made an illusory transfer." 9 N.E.2d at 969. The court explained that although an intent to defraud is not relevant to the court's inquiry under the illusory transfer test, the court must nonetheless still consider whether the deceased spouse, when he or she made the inter vivos transfer to the trust, had an "intent to divest himself [or herself] of the ownership of the property." *Id.*

██ The relevance of intent when applying the illusory transfer test was further considered later in *Johnson v. La Grange State Bank,* 73 Ill.2d 342, 22 Ill.Dec. 709, 383 N.E.2d 185 (1978). In that case the Illinois court said that the relevant inquiry as to intent "relates to the absence of a present donative intent, not to the presence of an intent or purpose to minimize or defeat the statutory marital right of the now surviving spouse." *Id.,* 22 Ill.Dec. at 717, 383 N.E.2d at 193 (quoting *Toman v. Svoboda,* 39 Ill. App.3d 394, 349 N.E.2d 668, 673 (1976)). That court proceeded to add that "[a]lthough the spouse's marital rights can be defeated by an actual transfer, a purported transfer whereby the owner does not intend to convey a present interest, but intends to retain ownership, is evidence of an intent to defraud," which is sufficient to invalidate the trust. *Id.* (citing *Newman, supra.*). Thus, the court concluded that

> "an *inter vivos* transfer of property is valid as against the marital rights of the surviving spouse unless the transaction is tantamount to a fraud as manifested by the absence of donative intent to make a conveyance of a present interest in the property conveyed. Without such an intent the transfer would simply be a sham or merely a colorable or illusory transfer of legal title. * * * [I]f no interests passed under the trusts to the beneficiaries before the death of the settlor then the trusts are testamentary and invalid." *Id.,* 22 Ill.Dec. at 718, 383 N.E.2d at 194.

In order for a transfer of real property to a trust to be real, valid, and nonillusory, the spouse transferring the property must effectuate a completed inter vivos transfer by conveyance that both divests him or her of all ownership in the property and that, also, at the time of conveyance, is made with the proper donative intent. *See, e.g., Weber v. Harkins,* 65 R.I. 53, 13 A.2d 380 (1940)(discussion of donative intent requirement for a completed inter vivos gift and transfer).

That rule has also been adopted by the Maine court in *Staples v. King,* 433 A.2d 407 (Me.1981), where that court, in adopting the illusory transfer test, noted that "[i]t would be irrational to allow a married person to circumvent the statute by simply refraining from making a will and, instead, executing trusts which appear to deplete his estate but which reserve for himself, in effect, the benefits of owning the trust property." *Id.* at 411. Although *Staples* was merely concerned with whether the plaintiff in that case had stated in her complaint a claim upon which relief could be granted and not with the actual merits of the plaintiff's action, the court concluded that a trust that "from the technical point of view * * * does not quite take back all that it gives, but practically it does," would not be upheld if it acted so as to defeat a now-surviving spouse's statutory survival share. *Id.* (quoting *Newman,* 9 N.E.2d at 969).

██ Turning now to the case facts before us, we conclude, as did the court in *Newman,* that our statute, § 33–25–2, which grants a life estate to a surviving spouse in the real property owned in fee simple by his or her spouse at the time of his or her death, creates only an *expectancy* interest in the surviving spouse. The interest that descends and passes by § 33–25–2 does not become vested until one spouse dies while owning real property in fee simple. Until the time of death there is no means by which to determine the exact extent of the interest to which the surviving spouse is entitled, and therefore, a surviving spouse cannot possess a determinable vested interest until his or her spouse dies.[4] Because § 33–25–2 creates only an expectancy interest, a property-owning spouse is free, while he or she is alive, to transfer his or her real property without interfering with any vested right of a surviv-

---

4. It should also be noted that, in fact, until one spouse dies, it is not even clear which spouse will be the surviving one. Thus, even who will be the surviving spouse is a mere expectancy.

ing spouse. We believe that the illusory transfer test rule, in the context of the case facts before us in this appeal, also serves both to recognize and to give deserved deference to the policy interests once protected by our former dower and curtesy statute, § 33–25–1, and the rights of surviving spouses intended by § 33–25–2. That rule mandates that any conveyance of real estate made by one spouse to any third party or trust must be real and complete and not illusory. *See Johnson, supra; Staples, supra; Newman, supra.* We adopt now the illusory transfer test as the proper test to be used when determining whether a now-deceased spouse's inter vivos transfer of real property is sufficient to defeat a surviving spouse's statutory share pursuant to § 33–25–2.

When that test is applied to the facts in the record before us, it is clear that Anthony's transfer of his property to the trust was real and complete as of December 5, 1986, at which time, having previously resigned as trustee and having previously appointed his son as successor trustee, he disclaimed his power to compel any reconveyance to him of the real estate subject to the trust pursuant to G.L.1956 § 34–5–2, thus making the trust completely irrevocable and real. Anthony's intent when creating the trust, as noted earlier, was relevant only insofar as it tended to establish whether he had an intent to totally divest himself of the real estate, that is, whether he had the present donative intent that was required for the validity of his inter vivos transfer. Arguably, Anthony possessed only an intent to create a testamentary gift when he first attempted to establish the trust on December 29, 1983, evidenced by the fact that he retained the power to revoke the trust, retained the power to demand payment of the trust principal, and was the named trustee as well as the trust beneficiary. However, he certainly possessed and expressed the necessary present donative intent by June 25, 1986, when he named his son as successor trustee and totally divested himself of the right to revoke the trust. When later, on December 5, 1986, he disclaimed his right to demand any payment of the trust principal, it became absolutely clear that the trust was not then illusory. Therefore, at the time of Anthony's death on August 18, 1990, the trust was complete, valid, and real, having been made so with a then-present donative intent on Anthony's part, which completely divested him of all benefits of trust property ownership. Therefore, the trial justice's findings that the terms of the trust agreement should be enforced and that the real property conveyed to the trust by Anthony is not subject to Olga's statutory survival interest as codified in § 33–25–2 are without error. It was Olga's burden at trial to establish "by clear and satisfactory evidence" that Anthony did not intend, *in praesenti*, on December 5, 1986, to then finally and completely divest himself of all ownership and control over the trust property and to vest immediate exclusive ownership and control in the trust. *Slepkow v. Robinson,* 113 R.I. 550, 556, 324 A.2d 321, 325 (1974). She failed to so persuade the trial justice whose findings we sustain.

Accordingly, for all the foregoing reasons, Olga's appeal is denied and dismissed. The final judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.