**TRUSTEES OF MacINTOSH CONDOMINIUM ASSOCIATION,
Plaintiffs,**

v.

**FDIC, et al., Defendants.**

**Nos. 94–30252 KPN to 94–30258 KPN.**

United States District Court,
D. Massachusetts.

Dec. 19, 1995.

Albert J. Beaumier, Odierna & Beaumier, Springfield, MA, for Plaintiff.

Paul D. Maggioni, Jr., Federal Deposit Insurance Corporation, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER OF COURT WITH RESPECT TO PLAINTIFF'S AND DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 12 and 14)*

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

Presently before the Court are Plaintiffs' motion for summary judgment under Fed. R.Civ.P. 56 (Docket No. 14) and Defendant's motion to dismiss or alternatively for summary judgment (Docket No. 12). Plaintiffs are the duly elected trustees of the MacIntosh Condominium Association ("Association"), the organization of unit owners of the MacIntosh Condominiums located at 385 Worthington Street in Springfield, Massachusetts. Defendant is the Federal Deposit Insurance Corporation ("FDIC") as receiver and liquidating agent for Heritage Bank for Savings. The matter concerns individual actions brought by the Association to collect unpaid common area charges on seven different condominium units. All seven actions involve common questions of fact and law.

On December 6, 1994, the parties' motion to consolidate the seven cases was allowed by the Court in order to promote the speedy and inexpensive determination of the matter. In accord with the provisions of 28 U.S.C. 636(e) and Fed.R.Civ.P. 73, the parties also voluntarily consented to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial and an order for entry of final judgment. See Order of Reference dated January 10, 1995. For the reasons set forth below, the Court denies Plaintiffs' motion for summary judgment, denies Defendant's motion to dismiss and allows Defendant's motion for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

There are no genuine or material facts in dispute between the parties. Condominium units numbered 3B, 6G, 2B, 2A, 6B, 4G and 4A are all located in the MacIntosh Condominiums. The units were all assessed monthly common charges in accord with the condominium documents, including the master deed and the trust. The owners of the subject condominium units fell significantly in arrears with respect to these common charges. In addition, the owners of the units fell in arrears with respect to payment of first mortgage notes on each of the units. All the mortgages were originally granted to and held by Heritage Bank for Savings.

The FDIC, a party-in-interest, became receiver and liquidating agent for Heritage Bank for Savings when the bank failed. On June 10, 1994, the FDIC sent to the Association by certified mail, return receipt requested, a Mortgagee's Notice of Sale of Real Estate by which the Association was notified that a foreclosure auction for each of the units was scheduled for June 28, 1994 at 12:00 noon. Included with the letter was the Mortgagee's Notice of Sale of Real Estate. See *Motion to Dismiss or Alternatively for Summary Judgment*, Exhibit A. On June 28, 1994, the FDIC conducted the foreclosure sale of the units and entered the highest bid for each of the units, which bids were accepted by the auctioneer. On July 13, 1994, the FDIC sent a letter to the Association's counsel, informing him that the foreclosure sale had resulted in the purchase by the FDIC of the units and indicating that the FDIC's property manager would be in contact with the Association "concerning common charges due from the date of the foreclosure sale forward for the units purchased ..." Id., Exhibit B. The foreclosure deed to the FDIC for each unit was executed on August 29, 1994 and recorded with the Hampden County Registry of Deeds on September 19, 1994.

On July 18, 1994, the FDIC received from the Association a Notice of Delinquency to First Mortgagee, dated July 7, 1994, with regard to each of the units. In each notice, the Association indicated that the owners of the particular condominium unit were delinquent in the payment of common expenses. The delinquencies were also said to carry legal fees of $495 for each unit. These same notices, dated variously in July of 1994, were

sent to those individuals who were owners of the condominiums prior to the foreclosure on June 28, 1994. Subsequently, on July 21, 1994, thirty day notices pursuant to M.G.L. ch. 183A, § 6 were sent out by the Association's attorney. This Notice to Mortgagee of Intent to Institute Action to Enforce Lien now included higher legal fees in the amount of $795 for each of the units.

On August 15, 1994, the FDIC, through counsel, wrote to the Association's counsel and acknowledged receiving the notices with respect to the Association's claim that common charges, which became delinquent during ownership of the property by the previous owners of the property, were never paid. The FDIC informed counsel, however, that the Association "could only have a lien superior to that [f]irst mortgage if a lawsuit to enforce the lien was brought prior to the foreclosure sale." Id., Exhibit C. There being no evidence that a suit was filed, the FDIC asserted that the foreclosure sale extinguished the Association's liens against the units and declined payment of condominium fees prior to June 28, 1995.

By letter dated August 16, 1994, the Association's counsel informed the FDIC of his disagreement with the interpretation of the Massachusetts Condominium Act. See id., Exhibit A. Counsel also indicated that the FDIC would be responsible for six months of common area charges, attorney's fees and costs and that nothing required the filing of a suit by the Condominium Association *prior* to the foreclosure sale. Id.

On August 29, 1994, the Association commenced suit against each of the unit owners and the FDIC as a party-in-interest, claiming a priority afforded by the Massachusetts Condominium Act, M.G.L. ch. 183A, for unpaid common charges, costs, and attorney's fees and seeking payment. The suits were originally filed in the Springfield district court. The Association alleged that the former owners of the condominiums owed the condominium fees and that those unpaid fees were a lien on the condominium (Count II) and that the lien had "super priority" status to the extent of any fees which became due in the six months prior to the institution of the action (Count III). The Association also named as defendants any individual or institution who might have held a second mortgage on the various condominiums.

All of the non-FDIC Defendants, i.e., the former owners and holders of second mortgages, defaulted in the state court. Each matter was then removed to this Court by the FDIC pursuant to 12 U.S.C. § 1819(b)(2)(B), which enables the FDIC to remove any action from a state court to an appropriate United States District Court, and 28 U.S.C. § 446, which establishes the procedure for removal. Since Count I of each of the Association's complaints is directed at the individual former owners of the applicable condominium, only Counts II and III are before this Court. As indicated, the seven individual actions have been consolidated.

### III. MOTION TO DISMISS

In its motion to dismiss, the FDIC contends that Counts II and III of the Association's complaints must be dismissed because the Association failed to file proofs of claim with the FDIC pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d). Under FIRREA, all claimants must comply with and exhaust an administrative claims process prior to maintaining litigation against the FDIC as the receiver of a failed institution. 12 U.S.C. § 1821(d)(13)(D).[1] Failure to comply with these procedures, the FDIC argues, deprives the Court of jurisdiction to hear any claim that seeks payment from the assets of a failed financial institution or a determination of rights with respect to those assets. See *Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1152 (1st Cir.1992). In response,

---

**1.** Section 1821(d)(13)(D) specifically provides that:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—(i) any claim or action for payment from, or any action seeking a determination of rights with

respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

the Association concedes that no claims were made at the time suit was filed, but argues that FIRREA is not applicable to a lien that attaches *prior* to the FDIC's ownership of the property.

The only exception to the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) is contained in 12 U.S.C. § 1821(d)(5)(C)(ii), which provides for a waiver if the claimant did not know of the appointment of the FDIC as receiver. Section 1821(d)(5)(C)(ii) is discretionary, giving the FDIC "the authority, but not the mandate to consider an untimely filed administrative claim." *Sapp v. FDIC*, 876 F.Supp. 249, 254 (D.Kan.1995), *recons. denied* (D.Kan. Feb. 10, 1995). In this regard, the FDIC indicated at oral argument that it did not wish the Court to address the motion to dismiss at this time because the Association, despite its assertion that it had no obligation to do so, did in fact file a proof of claim with respect to each of the condominiums on July 6, 1995. These claims were evidently filed in response to a letter from the FDIC itself deeming the Association to be a "late discovered claimant."

Accordingly, the FDIC's motion to dismiss is denied without prejudice. The parties' cross-motions for summary judgment remain outstanding.

### IV. SUMMARY JUDGMENT STANDARD

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McCarthy v. Northwest Airlines*, 56 F.3d 313, 314 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). See *Flanders & Medeiros, Inc. v. Bogosian*, 65 F.3d 198, 201 (1st Cir. 1995); and *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994). Where, as here, there is an absence of a genuine dispute of material fact, motions for summary judgment

can be resolved as a matter of law. See *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir. 1992).

### V. DISCUSSION

With respect to the parties' cross motions for summary judgment, the essential questions of law before the Court include whether the Association's liens for common area charges are entitled to a priority to the extent of six months and whether such liens are extinguished by the FDIC's foreclosures. As indicated, Count II of the complaints seeks to establish a lien and Count III requests that the lien requested in Count II be given "super-priority" status, all pursuant to M.G.L. ch. 183A, § 6. The FDIC contends that (i) the Association's liens were extinguished by the FDIC's foreclosure on June 28, 1994, and that, in any case, (ii) 12 U.S.C. § 1825(b)(2) prevents the property of the FDIC from being subject to levy, attachment, garnishment, foreclosure or sale without its consent, a consent that it has not given. Therefore, the FDIC asserts, Counts II and III in the Association's complaints are barred. In contrast, the Association asserts that the liens were superior to the mortgages on which the FDIC foreclosed and that, in any case, it was entitled to file its actions after the foreclosure sales to effectuate and enforce the liens.

Section 6 of M.G.L. ch. 183A—which has been continuously amended in recent years—provides a condominium association with a lien on condominium units for unpaid common expenses. Section 6(a) establishes that "the organization of unit owners shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due." The condominium lien, which exists on the date the condominium fees become due, is given a priority over all other liens except for the three types listed in section 6(c) of the statute. In applicable part, Section 6(c) provides that

[s]uch lien is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the recordation of the master deed, (ii) a first mort-

gage on the unit recorded before the date on which the assessment sought to be enforced became delinquent, and (iii) liens for real estate taxes and other municipal assessments or charges against the unit.

The condominium lien achieves "super priority" status over the first mortgage when a condominium association institutes "an action to enforce the lien." Thus, Section 6(c) provides that:

> [t]his lien is also prior to the mortgages described in clause (ii) above to the extent of the common expense assessments based on the budget adopted pursuant to subsection (a) above which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien and to the extent of any costs and reasonable attorneys' fees incurred in the action to enforce the lien ...

Accordingly, the institution of an action by a condominium association is a condition precedent to achieving "super-priority" status for the condominium lien. However, even when the association files such an action, the condominium lien is given a "super-priority" status only to the extent of unpaid condominium fees for the preceding six months.

■ It is uncontested by the parties that a lawsuit is required before a lien for unpaid condominium fees achieves a "super-priority" status. See also *In re Stern,* 44 B.R. 15, 19 (Bankr.D.Mass.1984). ("the establishment of the lien is not dependent on the commencement of a lawsuit, which is only a step necessary to elevate the status of the lien to a position superior to other encumbrances, other than municipal liens and first mortgages.") Furthermore, the FDIC does not dispute that, prior to its foreclosures, condominium liens existed on the condominiums; it merely asserts that such condominium liens were junior in priority to the FDIC's first mortgages and were extinguished by the fore-

closure. See M.G.L. ch. 244, § 1, *et seq.* It is also undisputed that the Association instituted its actions to enforce the liens on August 29, 1994, approximately two months after the FDIC foreclosed on its first mortgages on June 28, 1994.[2]

The Association, making a distinction between the "creation" and the "perfection" of the liens, counters by first arguing that the liens pre-existed the mortgages. Comparing a lien for common charges to a mechanics lien established by a notice of contract under M.G.L. ch. 254, § 2, the Association asserts that a lien for common charges is created by operation of law at the time the condominium trust and master deed are recorded. Since these condominium documents were recorded in June of 1988, well before the first mortgages at issue here, the Association argues that its liens take priority even over the first mortgages. In this regard, the Association's argument, unsupported by statutory or case law, must fail.

■ The comparison between a notice of contract, establishing a mechanics lien, and a master deed, establishing a condominium, is not as self-evident as the Association believes. The notice of contract informs the world of a contract, an actual debt and a mechanics lien "to secure the payment of all labor and materials which shall be furnished by virtue of said contract." M.G.L. ch. 254, § 2. In contrast, a master deed, in conjunction with a declaration of condominium trust, only establishes the right of a condominium association to pursue a lien for future unpaid condominium fees. The lien itself does not come into effect until the fees are unpaid. As M.G.L. ch. 183A, § 6 provides, the lien on a unit for any common expense assessment is levied against the unit "from the time the assessment becomes due." If the assessment is paid, no automatic levy attaches. If the assessment is not paid, the lien is effective, by operation of the statute, at the time

---

2. Given the timing of its lawsuit, the Association is seeking "super priority" liens for only four of the six months otherwise permitted by M.G.L. ch. 186A, § 6. Since the parties agree that the FDIC has paid condominium fees on all the subject condominiums since the date of the foreclosure sales on June 28, 1994, the only unpaid condominium fees which exist in the six month period are for the months of March, April, May and June of 1994. The unpaid condominium fees for these four months for all of the units combined amounts to $3,506.24. In addition, the Association's counsel asserts that he is owed $17,497.87 in legal fees and expenses, at least until the filing of the motions now before the Court.

the assessment was "due," not at the time the master deed was filed. The "plain meaning" of the statutory language, as a whole, controls its construction. *Summit Inv. & Dev. Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir.1995). See also *Laracuente v. Chase Manhattan Bank,* 891 F.2d 17, 21–22 (1st Cir.1989). It can hardly be argued that each lien, no matter when effective, relates back to the date the master deed was filed, months if not years prior.

The second, and perhaps more appropriate, argument pursued by the Association is that the liens for unpaid condominium fees and costs were not extinguished at the time the FDIC foreclosed on the pre-existing first mortgages. The Association insists that nothing in the statute supports an interpretation that a lien for unpaid condominium fees is a junior lien until suit is filed. In response, the FDIC does not dispute the right of the Association to pursue the other defendants, prior owners of the condominiums, for such unpaid condominium fees. In fact, the Association already has default judgments against these owners. The FDIC simply asserts that the Association cannot collect those fees, or attendant costs, from the FDIC or impose liens against it. The Court agrees with the FDIC.

■ First, there is little question that the FDIC's foreclosures extinguished any subordinate liens as existed at the time. See *Osborne v. Burke,* 1 Mass.App.Ct. 838, 838, 300 N.E.2d 450, 451 (1973) ("[a]s a result of the first mortgage foreclosure the second mortgage lien was extinguished but not the second mortgage debt" (citing *Purdie v. Roche,* 304 Mass. 647, 650, 24 N.E.2d 674 (1939))). See also *Volpe Constr. Co. v. First Nat'l Bank,* 30 Mass.App.Ct. 249, 255, 567 N.E.2d 1244, 1248 (1991) (mechanics lien extinguished by foreclosure sale). In this regard, M.G.L. ch. 183A, § 6(c) specifically provides that, without the commencement of an enforcement action by a condominium associ-

ation, a lien for unpaid condominium fees is "prior" to all other liens and encumbrances "*except* ... (ii) a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent ..." (emphasis added). That exception makes the lien junior at least until an action is commenced. Indeed, if the lien was anything but junior to the first mortgage, there would be no reason to require that an action be filed in order to grant that lien super-priority status. As discussed, the Court does not accept the Association's position that, irrespective of the commencement of an action, the condominium liens had a priority status from the date the master deed was recorded.

■ Second, and more to the point, the imposition of a lien on the property of the FDIC is prohibited by federal law. The FDIC was created by Congress to insure banks and exercise certain powers as the receiver of failed banks. 12 U.S.C. § 1811. In essence, the FDIC was created in order to promote the stability of, and confidence in, the nation's banking system. *Gunter v. Hutcheson,* 674 F.2d 862, 870 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63, *reh'g denied,* 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982). In pursuit of these goals and in accord with FIRREA, "[n]o property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], *nor shall any involuntary lien attach to the property of the [FDIC].*" 12 U.S.C. § 1825(b)(2) (emphasis added).

Notwithstanding the language of 12 U.S.C. § 1825(b)(2), the Association argues that nothing in M.G.L. ch. 183A, § 6 bars an action to perfect a super-priority lien *after* a foreclosure by the FDIC.[3] Indeed, the parties have directed much of their effort towards the interpretation of M.G.L. ch. 183A, § 6 in this regard. It appears to the Court,

---

3. The Court need not resolve whether an action could be filed by a condominium association *prior* to a foreclosure sale when the FDIC holds the first mortgage. If permitted, the liens would be senior to the FDIC's first mortgages and remain unextinguished at the time of the FDIC's foreclosures. Whether the Association could

pursue the action prior to the foreclosure or thereafter foreclose on its liens are not questions which the Court need address. See, e.g., *Matagorda County v. Russell Law,* 19 F.3d 215, 221–22 (5th Cir.1994) (prior tax lien interest can not be foreclosed without consent of the FDIC).

however, that the purpose of granting priority status to the lien over the first mortgage can only be served if a first mortgage exists. Thus, the super-priority lien, which is perfected by the filing of an action under M.G.L. ch. 183A, § 6, is "prior" only to the "first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent." No such prior mortgage exists, however, if a condominium association files its action after that mortgage has been foreclosed. It therefore does not appear that the state statute contemplates that an action can be filed after foreclosure.[4]

If the interpretation of this aspect of the state statute was determinative, the Court would certify the question to the Supreme Judicial Court of Massachusetts. See *Williams v. Hanover Housing Authority,* 871 F.Supp. 527, 533 (D.Mass.1994). Given the lack of any controlling interpretive authority, the course the state court would take is not so reasonably clear as to be predicted by this Court. See *Nieves ex rel. Nieves v. University of Puerto Rico,* 7 F.3d 270, 275 (1st Cir.1993) (citing *Porter v. Nutter,* 913 F.2d 37, 41 n. 4 (1st Cir.1990)). Moreover, the resolution of the question might have important ramifications for other cases in the Commonwealth, if not the practical administration of condominium associations as well. See *Globe Newspaper Co. v. Beacon Hill Architectural Comm'n,* 40 F.3d 18, 24 (1st Cir.1994); and *Nuccio v. Nuccio,* 62 F.3d 14 (1st Cir.1995).

▉ The Court, however, need not interpret the statute in this regard in order to reach its ruling. The determinative question here is whether the Association can pursue an action for a super-priority lien *against the FDIC* after a foreclosure sale has resulted in the *FDIC* becoming the owner of the property. The Court has determined that it can not. Thus, even if the Association can, in general terms, file an action after a foreclosure sale pursuant to M.G.L. ch. 186A, § 6, such an action, when pursued against the FDIC, is barred by 12 U.S.C. § 1825(b)(2) because it would create an involuntary lien on the property of the FDIC, whether by super priority or not. The authority under M.G.L. ch. 186A § 6 to file a post-foreclosure action against other individuals or institutions, and its effects, is not before the Court.

Accordingly, even assuming that a condominium association has the general power to perfect a lien by filing suit after a foreclosure on a condominium unit, the lien which the Association seeks to impose on the FDIC in the present matter is not permitted under FIRREA. See *GWN Petroleum Corp. v. OK–Tex Oil & Gas,* 998 F.2d 853 (10th Cir. 1993) (no garnishment of mineral rights proceeds in the hands of the FDIC); and *Midlantic Nat'l Bank/North v. Federal Reserve Bank,* 814 F.Supp. 1195 (S.D.N.Y.1993) (once receiver appointed, judgment creditor could not complete levy on property). See also *Matagorda County,* 19 F.3d at 215. The exemption of 12 U.S.C. § 1825(b)(2) applies to the Association even if it could otherwise pursue a super-priority lien by filing an action *after* a foreclosure sale.

Thus, whether the Association is attempting to convert the lien from junior status, or no status, to priority status, the Association's action adversely effects the FDIC in just the way that 18 U.S.C. § 1825(b)(2) seeks to avoid. The Association may posit, as it does, that a foreclosing entity should be aware that a super-priority lien might spring into existence up to six months after foreclosure. The Association, however, must file a lawsuit in order to effectuate the lien, and it is that act, and the effect which it seeks to impose against the FDIC, that is indistinguishable from any other kind of levy or attachment precluded by 18 U.S.C. § 1825(b)(2). The FDIC should not assume that it has a liability of up to six months of pre-existing condominium fees, only to have to wait for the commencement of suit by the Association. The FDIC is entitled to bid on its foreclosed

---

4. The filing of an action after a foreclosure sale would also be unwieldy. There would be diminishing returns the later the action is filed. Thus, a super priority exists only to the extent of unpaid condominium fees for six months prior to the date the action is filed. Assuming that a new condominium owner pays the condominium fees from the date of the foreclosure sale, the super-priority would lose one month for each month an association delays in filing its action.

**66**

mortgage, taking into account the exact extent of pre-existing liabilities, if any. If the Association waits until after foreclosure, it clearly runs afoul of the anti-levy provisions of 18 U.S.C. § 1825(b)(2).

The Association's last attempt to get out from under the strictures of 18 U.S.C. § 1825(b)(2) is its assertion that the FDIC would not itself owe the unpaid condominium fees and costs. Indeed, the Association concedes that it cannot foreclose on a condominium as long as it is in the FDIC's ownership. Rather, the Association argues, the fees and costs protected by the lien would have to be paid only when the FDIC sells the unit, at which time the new owner would receive a 6(d) certificate that the unit is free of condominium liens. M.G.L. ch. 183A, § 6(d). As would be expected, such certificates are routinely required by new owners and their lending institutions. While the Association implies that the new owner could pay the lien, it is evident that the lien would either increase the cost of the unit, effecting its marketability, or diminish the amount received by the FDIC upon sale. Either way, the FDIC's asset is adversely effected. As such, the lien clearly falls within the purview of 18 U.S.C. § 1825(b)(2).

## VI. CONCLUSION

The purpose of 12 U.S.C. § 1825(b)(2) is the protection of assets of the FDIC as a receiver of a failed bank. The Association is asking for a remedy which is specifically enumerated in the statute and specifically prohibited. Because the federal statute prohibits the imposition of any lien, including a lien with super-priority status, summary judgment must be granted for the FDIC on Counts II and III of the Associations' complaints. Concomitantly, the Association's motion for summary judgment is denied.