Twenty Eleven, LLC            :

v.            :

Michael J. Botelho et al.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-10-Appeal.
(KC 13-432)
(Dissent begins on page 15)

Twenty Eleven, LLC          :

v.          :

Michael J. Botelho et al.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The plaintiff, Twenty Eleven, LLC (plaintiff or Twenty Eleven), purchased a condominium unit at a condominium association lien foreclosure sale in August 2011.  On April 18, 2013, the plaintiff filed suit in Superior Court seeking to quiet title to the unit in its name and also seeking declaratory and injunctive relief to prevent a foreclosure by the prior owner's first mortgage holder, the defendant, PNC Bank, National Association (defendant or PNC).[1]  The plaintiff now appeals from the Superior Court's dismissal of its complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.  On appeal, the plaintiff asks us to address the novel question of whether a condominium foreclosure sale conducted pursuant to the Rhode Island Condominium Act, G.L. 1956 chapter 36.1 of title 34 (the act) extinguishes a prior-recorded first mortgage on the unit following the mortgagee's failure to exercise the right of redemption provided for in § 34-36.1-3.21(c).  After careful review of the record and of the parties' written submissions and oral arguments, we answer that

---

[1] The only defendants in this appeal are PNC Bank, National Association, the assignee of the first mortgage, and its servicer Select Portfolio Servicing, Inc.  We will refer to them collectively as "PNC" or "defendant."

question in the affirmative. Thus, we reverse the Superior Court's dismissal of the plaintiff's complaint and remand this case for further proceedings.

# I

## Facts and Travel

The relevant facts pertaining to this appeal are fairly straightforward and largely undisputed. On or about December 15, 2004, Michael J. Botelho (Botelho) purchased a condominium unit, Unit 905, in the Lockwood at Warwick Condominium development located at 3524 West Shore Road, Warwick, Rhode Island (the property). On the same day, Botelho also executed a promissory note in favor of First Franklin Financial Corp., d/b/a FFFC, Inc. (FFFC), in the amount of $114,400. The note was secured by a first mortgage on the property. Some time later, Botelho became delinquent on his condominium assessment fees. On July 19, 2011, the Lockwood at Warwick Condominium Association (the association) sold the property at a lien foreclosure sale due to the outstanding condominium assessment obligation owed by Botelho. A statutory condominium lien foreclosure deed conveying title to the property in exchange for payment in the amount of $21,000 was conveyed by the association to plaintiff on August 25, 2011.

Coincidentally, Botelho had also fallen behind on his first-mortgage payments, which had been assigned to defendant. On January 18, 2013, plaintiff was notified by letter from defendant's attorney that the property was to be sold at a mortgage foreclosure sale on March 14, 2013. The mortgage foreclosure sale was ultimately rescheduled; but, in the meantime, plaintiff instituted the present action on April 18, 2013, seeking to quiet title to the property in its name and also seeking a declaratory judgment that defendant had no further interest in the property. It

also sought an injunction permanently enjoining defendant from foreclosing on the property.[2] In addition to opposing plaintiff's motion for injunctive relief, defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6).

According to plaintiff, the act provides that the association's lien for outstanding condominium assessments held a priority position over defendant's first mortgage. Thus, when the association foreclosed on that lien, defendant's mortgage was extinguished, subject only to its right to redeem within thirty days in accordance with § 34-36.1-3.21(c) of the act. Because defendant failed to redeem within the thirty-day period, plaintiff posits that it obtained title to the property free and clear of defendant's mortgage.

In a bench decision, the hearing justice disagreed, and instead determined that plaintiff took title to the property subject to defendant's mortgage, finding that "nothing in the plain and unambiguous language of the statute * * * would extinguish a first mortgagee's priority position with respect to a subsequent condominium lien foreclosure deed." Moreover, the hearing justice stated that "[n]othing in [the right to redemption] indicates that a first mortgage is extinguished absent timely redemption by the mortgagee. In fact, the word extinguish does not appear in the statute * * *." As such, the hearing justice found that defendant's mortgage survived the association's lien foreclosure sale and that plaintiff took the property subject to its mortgage.

On August 28, 2013, the hearing justice entered an order granting defendant's motion to dismiss pursuant to Rule 12(b)(6).[3] The plaintiff filed a timely appeal to this Court.

---

[2] It is unclear from the record what the status of the foreclosure sale is at this time and whether it has been rescheduled.

[3] On November 27, 2013, the Superior Court entered judgment of dismissal nunc pro tunc as of August 28, 2013.

## II

## Standard of Review

"The solitary purpose of a Rule 12(b)(6) 'motion to dismiss is to test the sufficiency of the complaint.'" Tarzia v. State, 44 A.3d 1245, 1251 (R.I. 2012) (quoting Narragansett Electric Co. v. Minardi, 21 A.3d 274, 277 (R.I. 2011)). "[A] Rule 12(b)(6) motion to dismiss should be granted only 'when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim.'" Chhun v. Mortgage Electronic Registration Systems, Inc., 84 A.3d 419, 421-22 (R.I. 2014) (quoting Palazzo v. Alves, 944 A.2d 144, 149-50 (R.I. 2008)). "In undertaking this review, we are 'confined to the four corners of the complaint and must assume all allegations are true, resolving any doubts in [the] plaintiff's favor.'" Id. at 422 (quoting Minardi, 21 A.3d at 278).

Furthermore, "we review questions of statutory interpretation de novo." State v. Whiting, 115 A.3d 956, 958 (R.I. 2015) (quoting State v. Morris, 92 A.3d 920, 924 (R.I. 2014)). We must keep in mind that "our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Id. (quoting State v. Oster, 922 A.2d 151, 160 (R.I. 2007)). To that end, "[i]t is well settled that 'the plain statutory language' is 'the best indicator' of the General Assembly's intent." Zambarano v. Retirement Board of the Employees' Retirement System of Rhode Island, 61 A.3d 432, 436 (R.I. 2013) (quoting McCain v. Town of North Providence, 41 A.3d 239, 243 (R.I. 2012)). We are also mindful that "statutes should not be construed to achieve meaningless or absurd results." Ryan v. City of Providence, 11 A.3d 68, 71 (R.I. 2011) (quoting Berthiaume v. School Committee of Woonsocket, 121 R.I. 243, 247, 397 A.2d 889, 892 (1979)). We must "consider the entire statute as a whole; individual sections must be considered in the context of

the entire statutory scheme, not as if each section were independent of all other sections." Id. (quoting Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994)).

## III

## Discussion

In 1982, the Legislature enacted chapter 36.1 of title 34 (P.L. 1982, ch. 329, § 2), the Rhode Island Condominium Act. "The act essentially incorporated the language contained in the Uniform Condominium Act [UCA] and was made applicable to any condominium created in Rhode Island after July 1, 1982." America Condominium Association, Inc. v. IDC, Inc., 844 A.2d 117, 127 (R.I. 2004) (citing § 34-36.1-1.02(a)(1)), decision clarified on reargument sub nom., America Condominium Association, Inc. v. IDC, Inc., 870 A.2d 434 (R.I. 2005). It is undisputed that, since the condominium in this case was built in 1985, the act applies.[4]

### A. The "Super-Priority" Lien

Section 34-36.1-3.16 of the act, titled "Lien for assessments," is the statutory provision directly at issue in this case. Section 34-36.1-3.16(a) provides that "[t]he association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due." Section 34-36.1-3.16(b) goes on to establish the priority of the association's lien as compared to other encumbrances on the unit. It provides as follows:

---

[4] As a threshold matter, defendant argues that plaintiff does not have standing to assert the association's statutory lien rights. However, plaintiff is not seeking to assert the association's lien rights; rather, it is seeking to quiet title to the property in its name. "General Laws 1956 § 34-16-4 provides that any person claiming 'any interest or estate, legal or equitable, in real estate, including any warrantor in any deed or other instrument in the chain of title to the real estate' may bring a civil action against other people claiming any adverse interest in the property." Arnold Road Realty Associates, LLC v. Tiogue Fire District, 873 A.2d 119, 130 (R.I. 2005). The plaintiff, which obtained a condominium lien foreclosure deed to the property from the association, certainly has sufficient interest in the property to bring an action to quiet title.

"(1) A lien under this section is prior to all other liens and encumbrances on a unit except:

"(i) Liens and encumbrances recorded before the recordation of the declaration and not subordinated to the declaration,

"(ii) <u>A first mortgage or deed of trust on the unit recorded before the date on which the assessment sought to be enforced became delinquent</u>, and

"(iii) Liens for real estate taxes and other governmental assessments or charges against the unit." (Emphasis added.)

Based on this statutory language, it would appear that a first mortgage recorded "before the date on which the assessment sought to be enforced becomes delinquent," like defendant's mortgage here, is senior to a condominium association's assessment lien. The statute, however, does not stop there. Section 34-36.1-3.16(b)(2) further provides:

"The lien is also prior to any mortgage or deed of trust described in subdivision (b)(1)(ii) of this section to the extent of the common expense assessments based on the periodic budget adopted by the [condominium] association * * * which would have become due in the absence of acceleration during the six (6) months immediately preceding the foreclosure of the interest of the unit owner including any costs and reasonable attorney's fees not to exceed two thousand five hundred dollars ($2,500), incurred in the collection of any delinquent assessment or other charges by legal proceedings or otherwise and all costs of foreclosure held pursuant to section 34-36.1-3.21, including, but not limited to, publication, advertising and auctioneer costs, said foreclosure costs not to exceed five thousand dollars ($5,000) (for a total aggregate of attorney's fees and costs of seven thousand five hundred dollars ($7,500))."

It is this portion of the lien that is colloquially referred to as a "super-priority" lien. <u>See</u> <u>7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.</u>, 979 F. Supp. 2d 1142, 1147 (D. Nev. 2013). "Thus, the [a]ct effectively splits condominium-assessment liens into two liens of differing priority: (1) a lien for six months of assessments that is higher in priority than the first mortgage or first deed of trust * * * and (2) a lien for any additional unpaid assessments that is lower in priority than the first mortgage or first deed of trust." <u>Chase Plaza Condominium Association, Inc. v. JPMorgan Chase Bank, N.A.</u>, 98 A.3d 166, 173 (D.C. 2014) (<u>Chase Plaza</u>); <u>accord</u> <u>Trustees of MacIntosh Condominium Association v. FDIC</u>, 908 F.Supp. 58, 62-63 (D. Mass

1995) (distinguishing between an association's super-priority lien for delinquent assessments for the six months preceding a foreclosure action, which is superior to a first mortgage, and a lien for any remaining unpaid assessments, which does not enjoy super-priority status); Commissioners' Comment 2 to § 34-36.1-3.16 ("[S]ubsection (a) provides that the association's lien takes priority over all other liens and encumbrances except those recorded prior to the recordation of the declaration * * *. However, as to prior first mortgages, the association's lien does have priority for 6 months' assessments based on the periodic budget.").

It is undisputed that § 34-36.1-3.16(b)(2) operates so as to create a super-priority lien for at least some portion of a condominium association's outstanding assessments.[5] The dispute arises over what effect that super-priority lien, upon its foreclosure, has on a first mortgage. Does the statute operate such that foreclosing on this super-priority lien extinguishes a first mortgage, as plaintiff would have us hold, or does it merely create a payment priority, as defendant suggests?

We start by looking at the plain language of the statute. See Zambarano, 61 A.3d at 436. Here, the General Assembly used the words "prior to" to describe the priority of the condominium assessment lien relative to other encumbrances on the unit. This phrase has a very distinctive meaning in the mortgage and lien context. "'Prior' refers to the lien, not payment or proceeds[.]" SFR Investments Pool 1, LLC v. U.S. Bank, 334 P.3d 408, 412 (Nev. 2014) (SFR

---

[5] The defendant argues that the super-priority provision of the act has not been triggered in this case because plaintiff never alleged facts in its complaint that substantiate the claim that the association's lien was for common expenses as required by G.L. 1956 § 34-36.1-3.16(b)(2). However, a review of plaintiff's complaint reveals that plaintiff did assert that "a portion of [the association's] lien is prior to the first mortgage or deed; this super[-]priority portion is comprised of six months of common expense assessments * * *." On a motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, we must assume this allegation is true and resolve any doubts in plaintiff's favor. See Chhun v. Mortgage Electronic Registration Systems, Inc., 84 A.3d 419, 422 (R.I. 2014).

<u>Investments</u>). "And 'priority lien' and 'prior lien' mean the same thing, according to <u>Black's Law Dictionary</u> 1008 (9th ed. 2009): 'A lien that is superior to one or more other liens on the same property, usu[ally] because it was perfected first.'" [6] <u>SFR Investments</u>, 334 P.3d at 412.

To be sure, "[t]he [a]ct does not expressly address what happens when, as in this case, a condominium association forecloses solely on its super-priority lien and the proceeds of the sale are not sufficient to pay off a [first mortgage or] first deed of trust." <u>Chase Plaza</u>, 98 A.3d at 173. But § 34-36.1-1.08 of the act directs us to look to "[t]he principles of law and equity" to "supplement the provisions of this chapter." And in this case, "[a] general principle of foreclosure law * * * potentially provides an answer: liens with lower priority are extinguished if a valid foreclosure sale yields proceeds insufficient to satisfy a higher-priority lien." <u>Chase Plaza</u>, 98 A.3d at 173 (citing <u>Pappas v. Eastern Savings Bank, FSB</u>, 911 A.2d 1230, 1234 (D.C. 2006)); <u>see</u> <u>Pehoviak v. Deutsche Bank National Trust Co.</u>, 5 N.E.3d 945, 951 (Mass. App. Ct. 2014) (noting that "[s]o long as timely and proper notice * * * is given to junior lienholders, these subsequent liens are extinguished with the foreclosure of a senior mortgage lien"); 59A C.J.S. <u>Mortgages</u> § 838 at 74-75 (2009) ("In the absence of a statute to the contrary, usually, the foreclosure of a valid senior mortgage * * * will cut off junior liens or encumbrances * * *.") (citing <u>United States v. Brosnan</u>, 363 U.S. 237 (1960)). "We are inclined to think that if the [Legislature] had intended to depart from well-settled principles of foreclosure law, it would have done so explicitly." <u>Chase Plaza</u>, 98 A.3d at 174; <u>see</u> <u>Barrett v. Barrett</u>, 894 A.2d 891, 898 (R.I. 2006) (stating that "[a]s a general principle of statutory construction, we presume the

---

[6] Pursuant to § 34-36.1-3.16(d) of the act, "[r]ecording of the [association's] declaration constitutes record notice and perfection of the [association's] lien. No further recordation of any claim of lien for assessment under this section is required but is permitted." It is undisputed that the association's declaration of condominium was recorded on April 5, 1985; therefore no further recordation of the association's lien was required to perfect it.

General Assembly knows the state of the law when enacting new legislation") (citing Shelter Harbor Fire District v. Vacca, 835 A.2d 446, 449 (R.I. 2003)); see also 7912 Limbwood Court Trust, 979 F. Supp. 2d at 1150 ("Moreover, the Nevada Legislature presumably was aware of the normal operation of foreclosure law when it enacted Chapter 116 [of the NRS] in 1991. If the Legislature intended a different rule to apply to [a Homeowner's Association] foreclosure sale, it could have said so."). Because the Legislature did not so explicitly depart from these general principles, of which we assume it was aware, we are equally inclined to think it meant to adhere to them. It is therefore our view that when a super-priority lien established by § 34-36.1-3.16(b)(1)(ii) is foreclosed on, a first mortgage is extinguished.

Below, the hearing justice looked only to § 34-36.1-3.16(b)(1)(ii) to determine lien priority rather than looking at the statutory scheme as a whole. See Ryan, 11 A.3d at 71. Undeniably, § 34-36.1-3.16(b)(1)(ii) carves out an exception to the priority assessment lien in favor of a prior-recorded first mortgage. However, § 34-36.1-3.16(b)(2) creates an additional exception by providing that the assessment lien is still superior to a first mortgage under § 34-36.1-3.16(b)(1)(ii), up to a certain value.

This split-lien concept is indeed unconventional, but the drafters of the UCA were aware that they were creating an unusual statutory scheme. The Commissioners' Comments to the act describe the split-lien as "[a] significant departure from existing practice," but go on to say that this scheme was created to "strike[] an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of mortgage lenders." Commissioners' Comment 2 to § 34-36.1-3.16; see Sisto v. America Condominium Association, Inc., 68 A.3d 603, 611 (R.I. 2013) (noting that the official comments to the act "are to be used as guidance concerning the legislative intent in adopting the

chapter") (quoting America Condominium Association, Inc., 844 A.2d at 127). In any event, the plain language of the statute suggests that "however unconventional, the super[-]priority piece of the [condominium assessment] lien carries true priority over a [first mortgage or] first deed of trust." SFR Investments, 334 P.3d at 413. And, "if the super[-]priority piece is a true priority lien, then it is senior to the first [mortgage] * * * and its foreclosure will extinguish the first [mortgage]." Id. at 412 (citing Restatement (Third) Property: Mortgages § 7.1 (1997)); accord BAC Home Loans Servicing, LP v. Fulbright, 328 P.3d 895, 900 (Wash. 2014) (en banc) (noting that as a result of the condominium association instituting a foreclosure action, the first mortgagee's lien was "reprioritized" and "at that instant [the first mortgagee] became a subordinate junior lienholder whose lien interests were extinguished" following foreclosure).

We recognize that this statutory scheme may result in a lien for relatively minimal condominium assessment fees nullifying a security interest on a much larger loan, as is the case here.[7] This concern was not lost on the drafters of the UCA or the other courts that have tackled this issue. In light of this concern, they identify several practical solutions for first mortgagees to avoid extinguishment of their security interest by foreclosure on a super-priority lien. First, "'[a]s a practical matter, secured lenders will most likely pay the 6 * * * months' assessments demanded by the association rather than having the association [foreclose] on the unit.'" SFR Investments, 334 P.3d at 413; see Commissioners' Comment 2 to § 34-36.1-3.16. This payment can then be added on to the principal balance of the mortgage. Another option is for lenders to require payment of assessments into an escrow account, much as they sometimes do with

---

[7] It is unclear what the balance of the mortgage was at the time of the association's lien foreclosure, but we note that Botelho's original mortgage was for $114,400. The plaintiff bought the property at the foreclosure sale for $21,000, $13,501.57 of which was sent to defendant as surplus (which it did not accept), meaning that the lien for outstanding assessments was for only $7,498.43.

insurance premiums or real estate taxes. See Chase Plaza, 98 A.3d at 175 (citing UCA § 3-116, cmt.2). Regardless of whether or not lenders choose to employ these safeguards, the bottom line is that "statutory principles of priority, not the monetary value of the respective liens, control." 7912 Limbwood Court Trust, 979 F. Supp. 2d at 1151.

The defendant argues that the language "to the extent of" in § 34-36.1-3.16(b)(2) suggests that this provision operates merely as a payment preference. That is, if a first mortgagee were to foreclose, the provision would merely ensure that the condominium association would get paid first "to the extent of" its priority outlined in § 34-36.1-3.16(b)(2) before the first mortgagee could reap any funds from the foreclosure sale to satisfy its own mortgage. We disagree. The phrase "to the extent of" in § 34-36.1-3.16(b)(2) only limits the value of the super-priority lien (up to six months of delinquent assessment fees, plus up to $7,500 in attorney's fees and costs). "There is no indication that the words ['to the extent of'] were intended to impose any other limit, much less to create a novel lien with higher priority and the right to foreclose, but without the ability to extinguish a lower priority lien." Chase Plaza, 98 A.3d at 176. Furthermore, "[i]f the super[-]priority piece of the [association's] lien just established a payment priority, the reference to a first security holder paying off the super[-]priority piece of the lien to stave off foreclosure would make no sense." SFR Investments, 334 P.3d at 413.

The defendant also argues that extinguishing a first mortgage would render the language in § 34-36.1-3.21(b) meaningless. Section 34-36.1-3.21(b) provides that "[a]ny foreclosure sale held by the association pursuant to [this section], and the title conveyed to any purchaser or purchasers pursuant to such sale, shall be subject to any lien or encumbrance entitled to priority over the [association's lien] * * *." However, in light of the split-lien concept, this section is not

rendered entirely nugatory. For example, had the association foreclosed on the sub-priority portion of its lien (if there was one), defendant's first mortgage would have priority over that portion of the association's lien. Consequently, any purchaser at the foreclosure sale would take the property subject to the defendant's mortgage. See, e.g., Armand's Engineering, Inc. v. Town & Country Club, Inc., 113 R.I. 515, 520, 324 A.2d 334, 338 (1974) (noting that foreclosure on a junior mortgage does not extinguish a senior mortgage, and a buyer at a junior foreclosure sale takes the property subject to the senior mortgage). Here, the association foreclosed on its priority portion of the lien, so § 34-36.1-3.21(b) offers defendant no reprieve.[8]

## B. Right of Redemption

Following foreclosure of the super-priority lien, a first mortgagee has another opportunity to preserve its security interest. Section 34-36.1-3.21 of the act governs the foreclosure of a condominium lien. In 2008, the act was amended to include a right of redemption in favor of the holder of the first mortgage. It states as follows:

> "Any foreclosure sale held by the association pursuant to [this section], shall be subject to a thirty (30) day right of redemption running in favor of the holder of the first mortgage or deed of trust of record. The right of redemption shall be exercised by tendering payment to the association in full of all assessments due on the unit together with all attorney's fees and costs incurred by the association in connection with the collection and foreclosure process within thirty (30) days of the date of the post-foreclosure sale notice sent by the association * * *. Otherwise, the right of redemption shall terminate thirty (30) days from the date of the post-foreclosure sale notice * * *."

---

[8] The defendant also asserts that extinguishing its mortgage contradicts the express language in plaintiff's deed to the property, which states that it is "subject to mortgages of record, if any * * * which may survive the [foreclosure] sale." (Emphasis added.) But, as stated above, there were no mortgages of record (including defendant's) that survived the foreclosure sale.

-12-

The fact that the statutory scheme was amended in 2008 to include a right of redemption is indicative of the Legislature's intent that foreclosure of a super-priority lien extinguishes a first mortgage, for it is true that one cannot redeem what it has not lost.[9]

It is undisputed that defendant did not redeem the association's lien within the statutory period. While defendant is correct in arguing that it was not required to redeem the association's lien, nevertheless, by failing to do so, it forfeited its final opportunity to preserve its security interest in the property. At best, the right of redemption creates a conditional foreclosure: foreclosure of the super-priority lien extinguishes the first mortgage (and any other junior liens on the unit) unless the first mortgagee redeems within the statutory period. Here, defendant did not redeem and, as such, relinquished its last chance to save its security interest in the property.

Notably, there is no right of redemption in the UCA, and its absence further supports our interpretation of the statute. By amending the act in 2008 to include this right (as well as the notice provisions, discussed supra note 9), the Legislature took an affirmative step to offer more protection to lenders in recognition of the harsh reality that foreclosure on a condominium assessment super-priority lien could wipe out their security interests.[10]

---

[9] In addition to the right of redemption, several notice requirements were added to the act in 2008. First, the notice provision found in § 34-36.1-3.16(b)(4) requires the association to send a notice of delinquency, including the amount that is delinquent, to the unit owner as well as to the first mortgagee. Additionally, two notice provisions were added to § 34-36.1-3.21 (the foreclosure section) – subsection (a)(2) requires the association to mail notice to the unit owner and the first mortgagee of the time and place of the foreclosure sale at least twenty days prior to publishing notice of the sale, and subsection (a)(4) requires the association to send notice to the first mortgagee within seven days of the foreclosure sale. The addition of these provisions further indicates that it was the Legislature's intent that foreclosure on a super-priority lien would operate to extinguish a first mortgage because it provides the first mortgagee with notice of the lien and an opportunity on the front end to satisfy the lien in order to avoid foreclosure (and, thus avoid losing its security interest), as well as after the foreclosure sale (to redeem). The defendant does not contest the sufficiency of any notice provided by the association in this case.

[10] As an aside, we note that the association's foreclosure sale extinguished only defendant's security interest in the property, not the obligation stemming from the underlying note. See 7912

-13-

## IV

## Conclusion

In concluding, we are mindful of the implications of our holding today and the draconian nature of its effects. And yet, we are also reminded of the ancient maxim "dura lex sed lex," which stands for the proposition that although the law may be harsh, it is still the law. Here, the defendant could have avoided such harsh results had it availed itself of any one of the options available to it before or after foreclosure of the association's assessment lien. Unfortunately for the defendant, "[t]he inequity [it] decries is thus of its own making and not a reason to give [the statute] a singular reading at odds with its text and the interpretation given it by the authors and editors of the [UCA]." SFR Investments, 334 P.3d at 414.

It is not our task to rewrite the statute or circumvent the Legislature's intent to achieve a more temperate result. Rather, our task is to interpret the legislation as it is written. In so doing, we reverse the Superior Court's dismissal of the plaintiff's complaint and remand for further proceedings not inconsistent with this opinion.

---

Limbwood Court Trust v. Wells Fargo Bank, N.A., 979 F. Supp. 2d 1142, 1152 (D. Nev. 2013). Foreclosure eliminates liens, not debt; defendant can still sue Botelho on the note for the unpaid balance of the loan, though we do acknowledge that this effort may be futile.

**Justice Robinson, dissenting.**

> "You say you want a revolution
> Well, you know
> We all want to change the world."

> — The Beatles
> "Revolution" (1968)[1]

I respectfully, but very vigorously, dissent from the majority opinion. That opinion is well written and seeks earnestly to sail carefully between Scylla and Charybdis. However, I am convinced that the conclusion reached by the majority is far-reaching and indeed radical, if not revolutionary; and, in my view, it is not founded on an adequate basis in clear legislative authorization.

I do not question the prerogative and ability of the General Assembly to enact a legislative scheme similar to the one that the majority concludes is dictated by the existing statutory scheme. But I do not believe that, as of this point in time, the General Assembly has done so with anything near the degree of clarity that should characterize legislation that so fundamentally alters venerable principles of the law governing secured transactions. Indeed, it is truly remarkable that, in connection with the survival (<u>vel</u> <u>non</u>) of the prior recorded first mortgage after the condominium foreclosure sale, the statutes at issue are utterly <u>silent</u>; they never use the word "extinguish," nor any synonym thereof.[2] Also notable is the fact that, in

---

[1]    <u>See</u> The Beatles, <u>Revolution</u>, http://www.thebeatles.com/song/revolution (last visited November 20, 2015).

[2]    In the course of his decision granting defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, the trial justice in the Superior Court similarly noted the absence in the statute of verbs or nouns connoting extinguish or extinguishment or the like. In lapidary language he said:

addition to not using the word "extinguish," the statutes do not use the term "super-priority" which the majority employs to describe that portion of the association's lien that, by the terms of the statutes, is given priority over other recorded liens and mortgages.

A review of this Court's well-established precedent indicates that, when a statute is devoid of any language indicating that it was intended to extinguish a first recorded mortgage we should simply interpret the act as it is worded; "it is not the office of the [C]ourt to insert in a statute that which has been omitted and * * * what the legislature omits, the courts cannot supply." 73 Am.Jur.2d Statutes § 114 at 353 (2012); see Iselin v. Retirement Board of the Employees' Retirement System of Rhode Island, 943 A.2d 1045, 1049 (R.I. 2008); see also Raiche v. Scott, 101 A.3d 1244, 1249 (R.I. 2014). Moreover, we must be guided by "what the legislature said in a statute, and not by what [we] may think the legislature said." 2A Norman J. Singer and Shambie Singer, Statutes and Statutory Construction § 46:3 at 184 (7th ed. 2014).

In applying our precedent and analyzing the statutory scheme at issue, I have remained cognizant of Justice Felix Frankfurter's powerful metaphorical warning: "The search for significance in the silence of [the Legislature] is too often the pursuit of a mirage." Scripps–Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 11 (1942). I simply cannot perceive the necessary degree of clarity in the General Assembly's language that would be required for this Court to avoid the pursuit of such a mirage. Moreover, the unsettling absence of clarity in the statutes before us renders it impossible for me to be able to concur that the General Assembly has knowingly rendered insecure transactions that for generations have been understood to be the nec plus ultra in the world of secured transactions—viz., prior

---

"Nothing in this section indicates that a first mortgage is extinguished absent timely redemption by the mortgagee. In fact, the word extinguish does not appear in the statute * * *."

recorded first mortgages. It is certainly not the custom of the General Assembly to sound an uncertain trumpet when so much is at stake. As just one of several examples of that point, I note that, when this Court concluded that the General Assembly had intended to repeal the illusory transfer test in the trusts and estates context, the Court went out of its way to note the "clear, precise, and broad language" of the subject amendatory provision that was passed by the General Assembly. Barrett v. Barrett, 894 A.2d 891, 898 (R.I. 2006) (emphasis added). I do not believe that any objective speaker of English would be inclined to use those adjectives to describe the statutory scheme presently before us.

I note that the statutory scheme at issue includes a thirty-day right of redemption for the mortgage holder after the condominium foreclosure sale; the majority relies on that right of redemption in arriving at its conclusion that the mortgage in the instant case was extinguished. However, I do not believe that the inclusion of such a provision renders the statute clear enough to be interpreted in the manner that the majority endorses. In fact, I believe that it merely adds to the lack of clarity in the statutory scheme at issue.[3]

The majority opinion, with laudable candor, acknowledges its awareness of "the draconian nature" of the effects of its own holding.[4] But the very word "draconian" constitutes

---

[3]     A right of redemption is conventionally used to allow a debtor to redeem its property from a creditor. See, e.g., Desseau v. Holmes, 73 N.E. 656, 657 (Mass. 1905) (noting that an agreement between a debtor and a creditor stating that there would be no right of redemption for the debtor under a mortgage was void as against public policy). The statutory scheme with which this Court is contending specifically grants a right of redemption to the holder of the first mortgage rather than the debtor. See G.L. 1956 § 34-36.1-3.21. Thus, while the language used by the General Assembly in the right of redemption section may be clear when viewed in and of itself, when viewed in light of the other provisions of the statutes at issue, it still lacks the clarity which I believe is necessary for the General Assembly to so radically alter the principles of the law of secured transactions.

[4]     "Draconian" is defined as "[e]xceedingly harsh; very severe." The American Heritage Dictionary of the English Language 543 (5th ed. 2011).

- 17 -

the nub of what prevents me from joining my colleagues in the majority. The majority opinion perceives in the admittedly complicated and interrelated statutes at issue a scheme which radically unsettles very venerable principles concerning prior recorded first mortgages. I repeat that the General Assembly has the inherent right to change those principles—provided, of course, that there is adherence to pertinent state and federal constitutional norms. However, I believe that, in order to do so, the General Assembly would have to announce the parameters of the regime which it intended to impose in a far clearer manner than it has sought to do in the present highly complex and exception-riddled statutory miasma.

Consequently, I must respectfully, although forcefully, record my dissent.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**         Twenty Eleven, LLC v. Michael J. Botelho et al.

**CASE NO:**                  No. 2014-10-Appeal.
                                      (KC 13-432)

**COURT:**                    Supreme Court

**DATE OPINION FILED:**   December 4, 2015

**JUSTICES:**                 Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**            Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Kent County Superior Court

**JUDGE FROM LOWER COURT**:

                                      Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

                                      For Plaintiff:   Frank A. Lombardi, Esq.

                                      For Defendant:  Peter F. Carr, III, Esq.